UPTOWN FEDERAL SAVINGS AND LOAN ASSOCIATION OF CHICAGO, Plaintiff, *v.* GEORGE T. KOTSIOPOULOS *et al.*, Defendants.—(GEORGE T. KOTSIOPOULOS, Petitioner-Appellee, *v.* A.A. STORE FIXTURE CO., INC., *et al.*, Respondents-Appellants;—THE UNITED STATES OF AMERICA, Intervening Petitioner-Appellee, *v.* CENTRAL NATIONAL BANK OF CHICAGO, Trustee, Respondent-Appellant.)

First District (3rd Division)    No. 80-586

Opinion filed March 31, 1982.

Lawrence Sulzbacher and Kenneth E. Scheiwe, both of Chicago, for appellants.

Thomas P. Sullivan, United States Attorney, Northern District of Illinois, of Chicago (Mary Anne Mason and Frederick H. Branding, Assistant United States Attorneys, and Judith Irle, of counsel), for appellee United States of America.

No brief filed for appellee George T. Kotsiopoulos.

JUSTICE RIZZI delivered the opinion of the court:

George T. Kotsiopoulos, defendant in a mortgage foreclosure action, filed a petition pursuant to section 72 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 72) attacking the order which vacated dismissal of the foreclosure action for want of prosecution and all orders based thereon, including the order of default entered against him and the order approving the sheriff's report of sale and distribution filed after the sale of the subject property. The United States sought leave to intervene, claiming that although it had a valid and subsisting lien on the property when the foreclosure action was instituted, it did not receive notice of the action, and that it has a right of redemption under 28 U.S.C. §2410 (1976). A.A. Store Fixture Co., Inc., a judgment creditor of Kotsiopoulos and a defendant in the foreclosure action, and Central National Bank of Chicago as trustee under trust No. 23640 (CNB), which purchased the property at the foreclosure sale, filed a motion to strike and dismiss the section 72 petition. This motion was denied. CNB also filed a motion opposing intervention by the United States. Following a hearing, the trial court granted the relief sought in the section 72 petition and permitted the United States to intervene. It also permitted the United States to deposit with the court the sum necessary for redemption in the event the court's decision was reversed on appeal. A.A. Store Fixture and CNB appeal the orders of the trial court. We affirm.

On June 29, 1978, Uptown Federal Savings and Loan Association of Chicago filed a complaint to foreclose mortgages on real estate commonly known as 7301 N. Hamilton, Chicago, Illinois. The following parties were joined as defendants: (1) George T. Kotsiopoulos, the owner of record, and his wife; (2) Chicago Title and Trust as trustee under a trust deed dated January 13, 1976; (3) Bank of Chicago as assignee under an assignment of rents; (4) A.A. Store Fixture Co., Inc., as judgment creditor of Kotsiopoulos; and (5) unknown owners. A.A. Store Fixture was the only defendant to file an answer. On October 10, 1978, the foreclosure

action was dismissed for want of prosecution when none of the parties responded to the calendar call. The order of dismissal was subsequently vacated, apparently without notice to Kotsiopoulos and the other defendants who had not filed appearances.

On January 4, 1979, Uptown Federal moved for a default judgment in the foreclosure action against all defendants except A.A. Store Fixture, which filed an affidavit stating that its judgment against Kotsiopoulos in the amount of $14,631.13 plus costs and interest was not yet satisfied and that it claimed a lien in that amount on the property. The court granted Uptown Federal's motion. Also on January 4, the court entered its decree of foreclosure and sale, in which it ordered the public sale of the property by the sheriff with the proceeds to be paid to Uptown Federal in the amount of $38,113.86, which the court found due upon the notes and mortgages, with any remaining proceeds to be paid to A.A. Store Fixture to the extent of its lien.

The property was sold on February 15, 1979, to CNB for $38,963.90. The court subsequently approved the sheriff's report of sale and distribution. When no timely redemption was made, the sheriff issued a deed to the property to CNB on August 30, 1979.

On September 27, 1979, Kotsiopoulos filed a section 72 petition in which he contended that he received no notice regarding the foreclosure proceedings other than the original complaint and summons. He further alleged that he periodically checked the court file, and in so doing, he learned that the case had been dismissed for want of prosecution. His first knowledge of what had transpired came when he received a letter dated September 7, 1979, from the attorney representing the beneficiaries of CNB informing him of the sale of the property and advising him that he must vacate the premises within seven days. Kotsiopoulos contacted an attorney and the Small Business Administration, which was the assignee of a second mortgage given by Kotsiopoulos to Bank of Chicago. Kotsiopoulos also alleged that the value of the property greatly exceeded the bid accepted at the foreclosure sale, and that the successful bidder was a nonexistent trust used to disguise the true identity of the bidder and perpetrate a fraud upon the court. Kotsiopoulos sought to have the order vacating the dismissal for want of prosecution vacated as well as all subsequent orders.

A.A. Store Fixture and CNB filed a motion to strike and dismiss the section 72 petition, in which they alleged that the petition failed to show due diligence and a meritorious defense to the action. This motion was denied.

Kotsiopoulos subsequently filed an amended section 72 petition in which he realleged the counts in the original petition and further alleged that Irving Naiditch, president of A.A. Store Fixture, borrowed the

money used to buy the property at the foreclosure sale from Central National Bank, although the sheriff's report of sale shows the successful bidder as CNB. The trust agreement for the trust was unexecuted, and none of the beneficiaries paid any money for the property. A.A. Store Fixture and CNB filed a response in which they admitted that "the Trust, as purchaser, is chargeable with knowledge of any defects in the proceedings * * *." They denied the essential allegations of the petition. Following an evidentiary hearing, the court vacated the order of foreclosure and all subsequent orders based thereon.[1]

Meanwhile, during the pendency of the section 72 petition, the United States filed a petition for leave to intervene for and on behalf of the Small Business Administration which held a lien on the property. CNB filed a motion to dismiss the petition, which was denied, and leave to intervene was granted. The court also entered an order allowing the United States the right to redeem from the foreclosure sale if the sale was reinstated on appeal.

■■ A.A. Store Fixture and CNB first argue that the court erred in refusing to strike and dismiss the original section 72 petition.[2] The purpose of section 72 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 72) is to enable a party to bring before the court rendering a judgment matters of fact not appearing in the record which, if known to the court at the time the judgment was entered, would have prevented its rendition. (*Brockmeyer v. Duncan* (1960), 18 Ill. 2d 502, 505, 165 N.E.2d 294, 295.) A section 72 petition is addressed to the equitable powers of the court (*Windmon v. Banks* (1975), 31 Ill. App. 3d 870, 874, 335 N.E.2d 116, 119) and is primarily concerned with the prevention of injustice. (*Department of Public Works & Buildings v. Vogt* (1977), 51 Ill. App. 3d 770, 779, 366 N.E.2d 310, 316.) A liberal construction is used to achieve this end. (*Electrical Wholesalers, Inc. v. Silverstein* (1977), 47 Ill. App. 3d 689, 692, 365 N.E.2d 375, 377.) Relief under this section will be granted where the petitioner shows a reasonable excuse for failure to act within the appropriate time and a meritorious defense. See *Johnson-Olson Floor Coverings, Inc. v. Branthaver* (1968), 94 Ill. App. 2d 394, 397, 236 N.E.2d 903, 905.

■■ We believe that Kotsiopoulos' section 72 petition set forth sufficient allegations to withstand the motion to strike and dismiss. In his petition,

---

[1] The court determined that rather than vacating the order which vacated the order dismissing the cause for want of prosecution, it would allow that order to stand so that these proceedings could continue without delay. The court ordered that Kotsiopoulos' appearance herein would be a general appearance, and he was ordered to answer or otherwise plead to the complaint within 21 days. No objection was made to this procedure.

[2] Although Kotsiopoulos has not filed a brief in this matter, we shall consider the merits of his position as we are permitted to do under *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493.

Kotsiopoulos alleged that he periodically checked the file in this case and as a result learned that the case had been dismissed for want of prosecution. He made efforts to obtain refinancing of the mortgage. He also alleged that the sum bid at the foreclosure sale shocked the conscience because it represented less than one-half the actual value of the property. In addition, the purchase was made by a nonexistent trust, the use of which was intended to disguise the true identity of the buyer and perpetrate a fraud upon the court. Kotsiopoulos contacted an attorney upon receiving the letter from CNB's attorney informing him that he must vacate the premises.

The allegations in the petition were supported by affidavit as required by section 72(2) of the Act (Ill. Rev. Stat. 1979, ch. 110, par. 72(2)). In the affidavit, Kotsiopoulos stated that he had money available with which he could have paid off the arrearage on the mortgage or redeemed from the foreclosure sale if he had received adequate notice.

■■ In their motion to strike and dismiss, A.A. Store Fixture and CNB attacked the sufficiency of the section 72 petition on the grounds that it failed to set forth a showing of due diligence and a meritorious defense. A motion to dismiss attacks the legal sufficiency of the petition, not its factual sufficiency. (See *Browder v. Hanley Dawson Cadillac Co.* (1978), 62 Ill. App. 3d 623, 632, 379 N.E.2d 1206, 1213.) In determining legal sufficiency, the court must accept as true all well-pleaded facts and must then determine whether the allegations of the petition, when interpreted in a light most favorable to the petitioner, are sufficient to state a cause of action against respondents. (See *Rinck v. Palos Hills Consolidated High School District No. 230* (1979), 82 Ill. App. 3d 856, 863, 403 N.E.2d 470, 474.) A petition should not be dismissed unless it clearly appears that no set of facts could be proved under the pleadings which would entitle the petitioner to relief. (*Courtney v. Board of Education* (1972), 6 Ill. App. 3d 424, 425, 286 N.E.2d 25, 26.) Plainly, Kotsiopoulos' allegations, when interpreted in a light most favorable to Kotsiopoulos, show that Kotsiopoulos acted with due diligence and that he has a meritorious defense.

■■■ Moreover, the general allegations in the motion to dismiss the petition are not sufficient to support the granting of the motion. A motion to dismiss or strike a pleading because it is substantially insufficient in law must specifically point out why the pleading is thought to be insufficient (*Lee v. Conroy* (1973), 13 Ill. App. 3d 694, 696, 300 N.E.2d 505, 506; Ill. Rev. Stat. 1979, ch. 110, par. 45(2)), so that the party against whom the motion is directed may be allowed to cure the specified objection by amendment. (*Lee v. Conroy* (1973), 13 Ill. App. 3d 694, 696, 300 N.E.2d 505, 506; *Browning v. Heritage Insurance Co.* (1975), 33 Ill. App. 3d 943, 946-47, 338 N.E.2d 912, 915.) Here, the only allegations set forth in the motion to strike and dismiss are the broad allegations that the petition

does not show due diligence and a meritorious defense. The motion does not specifically point out wherein the petition was lacking, as required by section 42(2) of the Civil Practice Act. This omission is significant because Kotsiopoulos subsequently filed an amended petition in which specific failings in the original pleading could have been redressed. We conclude that the trial court properly denied the motion to strike and dismiss the original section 72 petition.

A.A. Store Fixture and CNB also contend that the section 72 petition should not have been granted because Kotsiopoulos failed to prove at the hearing on the petition that he acted with due diligence and that he had a meritorious defense.

At the evidentiary hearing, Kotsiopoulos testified that he resides at the property in question. When he learned of the foreclosure suit, he checked the court file to determine what action was being taken. Late in the year, a clerk informed him when he went to check the file that no further action was being taken. He relied on what the clerk told him. Kotsiopoulos further testified that in 1978 he lacked funds with which to pay off the entire mortgage but that his brother said he would be "interested in purchasing the mortgage." Kotsiopoulos' brother testified that he offered to help his brother and that he unquestionably had access to the requisite funds.

Irving Naiditch testified that he has a company known as A.A. Store Fixture. This company borrowed money from Central National Bank, and the funds were used to purchase the subject property at the foreclosure sale, although the bid was not made on behalf of the company. The beneficiaries of the trust which purchased the property were his four daughters, and they did not pay anything for the property. When asked whether the trust document showed that it had not been signed by Central National Bank, Naiditch replied, "It seems that way." During Naiditch's testimony, the attorney for CNB and A.A. Store Fixture conceded that CNB did not claim to be a bona fide purchaser protected by section 72(5) (Ill. Rev. Stat. 1979, ch. 110, par. 72(5)).[3]

Kurt Penn, the attorney who handled this matter on behalf of Uptown Federal, testified that he sent a copy of the notice and motion requesting the court to enter an order approving the sheriff's report of sale

---

[3] This provision states:

"Unless lack of jurisdiction affirmatively appears from the record proper, the vacation or modification of an order or judgment pursuant to the provisions of this Section does not affect the right, title or interest in or to any real or personal property of any person, not a party to the original action, acquired for value after the entry of the order or judgment but before the filing of the petition, nor affect any right of any person not a party to the original action under any certificate of sale issued before the filing of the petition, pursuant to a sale based on the order or judgment."

and distribution on March 2, 1979, to Kotsiopoulos. In rebuttal, Kotsiopoulos denied ever receiving this notice.

A.A. Store Fixture and CNB argue that Kotsiopoulos failed to show that he used diligence in following his case, and that he also failed to prove a meritorious defense because he did not prove that his brother provided him with the necessary funds or that he tendered funds to Uptown Federal. Additionally, they argue that Kotsiopoulos did not prove nonreceipt of the notice of motion for approval of the sheriff's sale. Therefore, they contend, the section 72 petition should not have been granted. We disagree.

As we previously stated, a petition to set aside a judgment under section 72 addresses itself to the equitable powers of the court. Where a default judgment has been entered under unfair, unjust or unconscionable circumstances, the judgment will be vacated in the interests of justice and fairness. (*Manny Cab Co. v. McNeil Teaming Co.* (1975), 28 Ill. App. 3d 1014, 1019, 329 N.E.2d 376, 379.) In determining whether a section 72 petition should be allowed, the conduct of the party opposing the petition may be considered. *Electrical Wholesalers, Inc. v. Silverstein* (1977), 47 Ill. App. 3d 689, 692, 365 N.E.2d 375, 378; see *Manny Cab Co. v. McNeil Teaming Co.* (1975), 28 Ill. App. 3d 1014, 1019, 329 N.E.2d 376, 380.

■■ Under the circumstances of this case, we believe that the granting of the section 72 petition will achieve a just result and that it is not unreasonable to compel the parties to go to trial on the merits. (See *Windmon v. Banks* (1975), 31 Ill. App. 3d 870, 876, 335 N.E.2d 116, 120-21.) Kotsiopoulos did not completely ignore the foreclosure action; he checked the file and learned that no action was being taken. He testified that he never received the notice and motion regarding approval of the sheriff's report on the sale, and the trial court chose to believe this testimony. In section 72 proceedings, the determination of the credibility of witnesses rests with the trier of fact, and a reviewing court will not substitute its judgment for that of the trier of fact unless it is against the manifest weight of the evidence. *Collins v. Prestige Casualty Co.* (1977), 54 Ill. App. 3d 762, 765, 370 N.E.2d 103, 106; *Nashlund v. Sabade* (1976), 39 Ill. App. 3d 139, 145, 350 N.E.2d 90, 95.

In addition, Kotsiopoulos testified regarding funds that were accessible to him that could be used to retire the mortgage or effect a redemption. Moreover, we believe that the concession of the attorney for A.A. Store Fixture and CNB that CNB was not protected by section 72(5) is an important factor to be considered here. There is some question regarding the existence of the trust which allegedly purchased the property. Under the totality of the circumstances, the only just result is to grant the petition, and the trial court acted properly in so doing.

At oral argument, counsel for A.A. Store Fixture and CNB agreed

that if this court found that the section 72 petition was properly granted, then their arguments opposing the United States' intervention and right of redemption would be moot. We therefore will not address these issues.

Accordingly, the orders of the trial court are affirmed.

Affirmed.

WHITE, P. J., and McNAMARA, J., concur.

